**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Delmer E. DAY (84–5797, 84–5872),
Johnny A. Pack (84–5803,
84–5888), Defendants-Appellants.**

Nos. 84–5797, 84–5803, 84–5872
and 84–5888.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 13, 1985.

Decided May 5, 1986.

John W. Gill, U.S. Atty., Knoxville, Tenn., Robert E. Simpson, Glenn L. Archer, Jr. (Lead), Asst. Atty. Gen.-Tax Div., Michael L. Paup, Chief, Appellant Section, Dept. of Justice, Washington, D.C., David A. Brown, Donald Searles, argued, for plaintiff-appellee.

Cecil D. Meek, Jr., argued, Haynes, Meek, Summers, Mabry, Knoxville, Tenn., for Delmer E. Day.

K. Karl Spalvins, Knoxville, Tenn., Leah J. Prewitt, for Johnny A. Pack.

Before KENNEDY and KRUPANSKY, Circuit Judges and SUHRHEINRICH, District Judge.*

KRUPANSKY, Circuit Judge.

Defendants-appellants Delmer E. Day (Day) and Johnny A. Pack (Pack) appealed their jury convictions for preparing false income tax returns in violation of 26 U.S.C. §§ 7206(1) and 7206(2).[1]

In substance, Clarence M. Moore (Moore) was charged with willfully preparing and subscribing his own false individual tax returns and willfully aiding and assisting in the preparation of false partnership tax returns for the tax years 1977 and 1978. Pack was charged with willfully preparing and subscribing his own false tax returns for the years 1977 and 1978 and willfully preparing and subscribing false partnership tax returns for the year 1977. Day was charged with willfully aiding and assisting in the preparation of false income tax returns for Moore, individually, for the tax year 1977, for Pack as an individual for the years 1977 and 1978, and for the partnership for the tax year 1977.

The operative facts are easily summarized. During 1976, Pack and Moore entered into an informal business relationship to strip-mine coal under the firm name of Log Mountain Mining Company (the Company). During August of 1977, Pack and Moore formalized their business relationship with a written partnership agreement under the same firm name and engaged Day to devise and program an accounting system for the newly created enterprise. Apart from his partnership interest in the Company, the evidence disclosed that Moore used the Company's mining equipment in a wildcatting operation to illegally strip-mine coal that was sold to purchasers who were directed by him to remit the purchase price in the form of checks payable to fictitious payees identified by him. Substantial cash was generated as a result of the wildcatting and check cashing scheme.

Although in his defense Moore asserted that the cash funds that resulted from the illegal strip-mining were disclosed to Day, the evidence was unclear and in conflict as to whether Day knew of Moore's clandestine illegal operation or was aware of the cash flow that resulted therefrom.

In February of 1978, Pack sold his partnership interest in the Company to Moore.

The thrust of the government's case at trial was anchored in evidence designed to prove that Pack and Moore diverted monies realized from cashing Company checks to themselves without accounting for the funds either in the Company's financial records or in their own personal income tax returns. The government also attempted to develop evidence that the cash realized from the wildcatting conducted by Moore was retained by Pack and Moore as unreported income. The government's evidence against Day was calculated to prove that he aided and assisted Pack and Moore through counseling and direction in implementing the scheme and in the preparation of their individual and partnership income tax returns.

---

* Hon. Richard F. Suhrheinrich, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. At the time of the actions at issue herein, 26 U.S.C. § 7206 provided in relevant part:
Any person who—
  (1) **Declaration under penalties of perjury.** —Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; or

  (2) **Aid or assistance.**—Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to represent such return, affidavit, claim, or document; ...
shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000.00, or imprisoned not more than three years, or both, together with the costs of prosecution.

The defendants denied culpability. Moore advanced the defense that he paid Pack a total of $210,000 for his partnership interest in the Company in addition to assuming the Company's outstanding liabilities. The evidence adduced at trial demonstrated conclusively that Pack had received $170,000 in cash at a meeting in February of 1978, that Moore's bookkeeper, Ronald Weiler, delivered $30,000 in cash to Pack at his home, and that Pack received the final $10,000 installment in the form of four $2,500 checks signed and identified at trial by Moore's wife. Moore's defense also developed evidence that the source of the purchase price paid to Pack came in part from his personal funds, all of which had been disclosed to Day for accounting and income tax purposes, and in part from two loans, one from his brother, and the other from the People's National Bank.

Pack's evidence attempted to establish that the sole consideration for the sale of his interest in the Company was Moore's assumption of the Company's outstanding liabilities without any exchange of cash or other funds.

Day denied assisting Moore and/or Pack in concealing any of their individual assets and attempted to meet the government's charges by producing evidence that he maintained the Company's accounts and prepared its partnership income tax returns and the individual income tax returns of Pack and Moore from the information supplied to him by those individuals.

Both Moore and Day testified at trial. Pack did not appear as a witness. Moore was examined and cross-examined exhaustively. During the cross examination of Moore, the government made a cursory ineffective attempt to impeach his testimony by reference to a certain recorded statement given by him during a pretrial interview conducted by Revenue Agent John Bright (Bright) and Special Agent John G. Doble (Doble) on December 15, 1980. During its rebuttal, the government moved to introduce certain highly prejudicial and incriminating excerpts from the recorded interview as substantive evidence. The court permitted the jury to listen to the offered testimony over defense objections.

Pack and Day were convicted of the crimes as charged in the indictment. Moore was acquitted on all counts. Pack and Day filed a timely appeal assigning as error the admission of Moore's highly prejudicial statement as substantive evidence against the defendants during rebuttal.

As previously noted, Moore had been interviewed on December 15, 1980 by Bright and Doble. Prior to the commencement of the interview, Doble assured Moore that he was not the target of any pending criminal investigation. He also advised Moore of his constitutional right to remain silent; that any statements he would make could be used against him in a later proceeding; that he had a right to have an attorney present and that he could terminate the interview at will to seek the advice and assistance of legal counsel. Upon these assurances, Moore taped what was characterized in the record as a sworn statement in which he cast himself as an uneducated country boy who left school upon entering the third grade and who had labored his way through the trials of life until he was misled by Pack and Day, both of whom had counseled and advised him in his business and financial affairs including the manner in which to accumulate the necessary cash monies with which to purchase Pack's partnership interest in the Company without legal implications. He characterized Day as a "damn crook" and identified Pack as the primary perpetrator of the check conversion scheme.

His statements were not only extremely prejudicial to both Pack and Day but contradicted his own testimony given during his appearance as a witness at trial.

On appeal, Pack and Day charged error to the trial court in permitting the admission of Moore's recorded statement as substantive evidence characterizing it as inadmissible hearsay. The district court justified the admission of Moore's recorded interview as a statement of a co-conspirator given during the course and in furtherance of a conspiracy. *See* Fed.R.Evid.

801(d)(2)(E). On appeal, the government supported the trial court's admission of the recorded statements as a statement of a co-conspirator made during the course and in furtherance of the conspiracy admissible pursuant to Fed.R.Evid. 801(d)(2)(E) and/or as a prior inconsistent statement given by the declarant Moore during the course of an "other proceeding" and admissible pursuant to Fed.R.Evid. 801(d)(1)(A). In the alternative, the government also argued that assuming arguendo, the recorded interview constituted inadmissible hearsay, its introduction was nevertheless harmless error as to both convicted defendants.

Moore's statement confronts the problematic area of hearsay within hearsay. Initially, the substance of Moore's controversial interview was anchored in statements which Moore attributed to Pack and Day. It is apparent that the government introduced Moore's recorded statement to prove, in the first instance, the truth of statements purportedly made to Moore by both Pack and Day and, in the second instance, to prove the truth of Moore's assertion that Pack and Day had, in fact, made the incriminating statements to him in the first instance. To qualify as admissible substantive evidence, both Moore's statements to IRS agents and the statements which Moore attributed to Pack and Day must either be excluded from the definition of hearsay in Rule 801 or fall within a specific hearsay exception enumerated in Rules 803 and 804. *Estate of Shafer v. Commissioner,* 749 F.2d 1216, 1220 (6th Cir.1984).

Initially, it is apparent that Moore's statement to IRS agents could not be justified as a statement of a co-conspirator made in the course and in furtherance of a conspiracy pursuant to 801(d)(2)(E) for the obvious reason that at the time the interview was conducted the tax returns at issue herein had already been filed, a criminal investigation had been initiated, and the conspiracy, if one had existed, had long since concluded.

In evaluating the government's attempt to qualify Moore's excerpted interview as a prior inconsistent statement admissible as substantive evidence against the defendants, the court's attention is directed to Rule 801(d)(1)(A) which reads as follows:

> A statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition.

The precise qualifying language of the above rule mandates that the declarant's inconsistent statement be given "under oath *subject to the penalty of perjury* at a trial, hearing, or other proceeding, or in a deposition." Although Moore's statement was characterized as a sworn statement, the evidence failed to disclose whether Doble had legal authority to administer an oath that would invoke the penalty of perjury upon a showing that the declarant perjured himself. The proponent of a hearsay statement bears the burden of proving each element of a given hearsay exception or exclusion. *See, e.g., United States v. Felix-Jerez,* 667 F.2d 1297, 1299 (9th Cir. 1982); *Witham v. Mabry,* 596 F.2d 293, 297–98 (8th Cir.1979). It was therefore incumbent upon the government, as proponent of Moore's tape recorded declaration, to prove by affirmative evidence that the individual administering the oath had legal authority to invoke the penalty of perjury. Because the record is devoid of any evidence that Doble had been invested with the legal authority to officially administer an oath that would and could subject Moore to the penalty of perjury at a trial, this court cannot conclude, as a matter of law, that Moore's statement was given under oath and was in fact subject to the penalty of perjury.

The government's position, to be viable, must also qualify the interview conducted by Bright and Doble as an "other proceeding" defined in the above rule. The legislative history of 801(d)(1)(A) discloses that Congress intended to qualify only those prior inconsistent statements that

were highly reliable and firmly anchored in the probability of truth as admissible substantive evidence. *See, e.g.,* M. Graham, Handbook of Federal Evidence § 801.11 (2d ed. 1986); Note, 10 Southwestern U.L.Rev. 985 (1978). In seeking to limit the admissibility of prior inconsistent statements for substantive purposes, Congress determined that statements given under oath at a "formal proceeding" were inherently more reliable than statements given in the absence of such formalities.[2]

Several circuits have already incorporated the congressional intent into decisions that have refused to admit statements given under informal circumstances tantamount to a station house interrogation setting which later prove inconsistent with a declarant's trial testimony and have denied their admissibility as substantive evidence

pursuant to 801(d)(1)(A). *See, e.g., United States v. Livingston,* 661 F.2d 239 (D.C.Cir. 1981) (sworn statement given to postal inspector investigating robbery); *United States v. Ragghianti,* 560 F.2d 1376 (9th Cir.1977) (prior statement obtained by FBI in criminal investigation); *Martin v. United States,* 528 F.2d 1157 (4th Cir.1975) (statements made to federal agents investigating firebombing).

However, the government, relying upon *United States v. Castro-Ayon,* 537 F.2d 1055 (9th Cir.), *cert. denied,* 429 U.S. 983, 97 S.Ct. 501, 50 L.Ed.2d 594 (1976), has insisted and continues to insist that Moore's interview comes within the ambit of an "other proceeding" under Rule 801(d)(1)(A). The totality of circumstances surrounding that interrogation are not reflected in the Ninth Circuit's decision.

2. An explanation of the legislative history attendant to the evolution of Rule 801(d)(1)(A) is helpful in understanding the legislative intent embodied into the enactment of the Rule in its final form. Prior to the promulgation of the Federal Rules of Evidence, inconsistent statements of a witness made before trial were inadmissible as substantive evidence and were legally functional only for the limited purpose of impeaching the witness' credibility. Rule 801(d)(1)(A), in its present form, was the product of a compromise negotiated in the Joint House and Senate Conference Committee which recognized as substantive evidence only those prior inconsistent statements of a declarant which were given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition.

The Rule as initially proposed by the Supreme Court rejected the traditional view and would have permitted the admission of all prior inconsistent statements made by a declarant as substantive evidence. H.R. No. 93–650, 93rd Cong., 2nd Sess., Note to Rule 801(d)(1), *reprinted in* [1974] 4 U.S.Code Cong. & Ad.News 7051, 7086. The House Subcommittee on Criminal Justice, however, amended the Supreme Court proposal to include inconsistent statements "given under oath and subject to the penalty of perjury at a trial or hearing or in a deposition or before a grand jury." Weinstein and Berger, *Weinstein's Evidence* § 801–13 (1985) *citing* Committee Print of June 28, 1973 of the Subcommittee on Criminal Justice, House Committee on the Judiciary, pp. 26–27. The House Committee on the Judiciary struck the reference to grant jury proceedings and imposed the contemporaneous opportunity for cross-examination of the declarant

as a condition for qualifying the prior statements as admissible substantive evidence. The House Committee on the Judiciary stated:

> The rationale for the committee's decision is that (1) unlike in most other situations involving unsworn or oral statements, there can be no dispute as to whether the prior statement was made; and (2) the context of a formal proceeding, an oath, and the opportunity for cross-examination provide firm additional assurances of the reliability of the prior statement.

H.R. No. 93–650, 93rd Cong., 2d Sess., Note to Rule 801(d)(1), *reprinted in* [1974] 4 U.S.Code Cong. & Ad.News 7051, 7087. The House Judiciary Committee's proposal was ultimately adopted by the House of Representatives.

The Senate rejected the House Rule and adopted the original Supreme Court rule. S.Rep. No. 93–1277, 93rd Cong., 2d Sess. Note to Rule 801(d)(1)(A) *reprinted in* [1974] 4 U.S.Code Cong. & Ad.News 7051, 7063. Thereafter, Representatives of the House and Senate conferred and arrived at a compromise. The Joint Conference Committee eliminated the contemporaneous cross-examination requirement that had been incorporated into the House proposal and provided that, to qualify as substantive evidence, a prior inconsistent statement had to be "given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition." The Conference Committee note specifically stated that "[t]he rule as adopted covers statements before a grand jury." H.R. Conf.Rep. No. 93–1597, 93rd Cong., 2d Sess., Note to Rule 801(d)(1)(A) *reprinted in* [1974] 4 U.S.Code Cong. & Ad.News 7051, 7104. The Conference Committee version was promulgated as law by both the House and the Senate.

*Castro-Ayon* may therefore be distinguishable on its facts from the case at bar. This Court is not constrained to adopt the Ninth Circuit's decision, however, and to the extent the facts are not distinguishable, we decline to follow it.

Mindful of the congressional intent to ensure the reliability and truthfulness of any prior inconsistent statement as a condition of its admissibility as substantive evidence at trial, this court must evaluate the reliability and truthfulness of the Moore statement by examining the totality of the circumstances that pervaded the Moore interview.

■ Apart from the fatal infirmity of the controversial Moore recording, namely, the complete absence of affirmative proof that it was given under an oath that invoked the penalty of perjury, the statement fails to satisfy the criteria imposed by Congress to qualify it as a prior inconsistent statement given during the course of an "other proceeding" because the circumstances surrounding the recording of the statement militate against reliability and truthfulness.

Initially, it is interesting to note that agents Bright and Doble characterized their meeting with Moore as an interview and not a formal proceeding. Although the statement was purportedly a sworn attestation, the evidence failed to disclose that it was given "under oath subject to the penalty of perjury." Moreover, Moore's motivation, mirrored in the tone and content of the statement, disclaims its reliability and truthfulness.

Moore's statement was patently self-serving, calculated to exculpate himself from criminal activity at the expense of his associates by intentionally diverting attention to and incriminating Day as "a damn crook" and Pack as the architect of the

check conversion scheme, both of whom counseled and directed him in his business and financial affairs.

Accordingly, for the reasons articulated herein, this Court concludes that Moore's statement is fatally flawed because it was not given "under an oath subject to the penalty of perjury" and because the statement was given under circumstances more aptly described as a station house interrogation than an "other proceeding" which would, as contemplated by 801(d)(1)(A) of the Federal Rules of Evidence, ensure and inspire the reliability and truthfulness of the statements. To permit it to be considered as substantive evidence by the jury constituted prejudicial error as against all defendants.[3]

■ In balancing the marginal evidence developed by the government to support its conviction of defendant Day against the prejudice which resulted from permitting the jury to listen to excerpts from the Moore statement, this court concludes that the error arising as a result thereof was not harmless and deprived the defendant Day of a fair and impartial trial. This court's reasoning and conclusions apply equally to Pack's conviction on counts five and seven of the indictment. Accordingly, the conviction of defendant Day on all counts of the indictment wherein he was charged is reversed and Pack's conviction on counts five and seven of the indictment are also reversed and remanded for a new trial. However, in balancing the overwhelming evidence that disclosed the substantial amounts of cash that had been received by Pack as payment for his partnership interest in the Company during February of 1978 and his failure to report those cash payments in his personal income tax returns against the prejudice invoked by the controversial Moore statement as

---

**3.** We do not decide whether the declarant "was subject to cross-examination concerning the statement" as required by Rule 801(d)(1)(A) of the Federal Rules of Evidence where, although declarant testified in the case-in-chief, the statement is offered in rebuttal without recalling the declarant as a witness. In *Southern Stone Co., Inc. v. Singer,* 665 F.2d 698, 704 n. 6 (5th Cir. 1982), the Fifth Circuit held that allowing such hearsay into evidence when the declarant is merely available to be called by the opposite party would place an additional duty upon the opponent of the exhibit containing the hearsay statements and thus create an exception to the hearsay rule which does not exist in the rule itself.

substantive evidence at trial, this court concludes that the error of the trial court's ruling was harmless and the conviction of defendant Pack on count six of the indictment is affirmed.

■ Pack also charged that the district court erred in denying his motion for severance because the defendants in this case presented antagonistic defenses. In *United States v. Gallo,* 763 F.2d 1504 (6th Cir. 1985), this court reaffirmed the stringent test to be applied against a defendant asserting error by a district court to a ruling denying severance. Noting that "[p]ersons jointly indicted should normally be tried together," the *Gallo* court indicated that review of a district court's decision on a motion to sever is to be considered pursuant to an abuse of discretion standard. To demonstrate an abuse of discretion, the defendant "must make a strong showing of prejudice" and, in particular, "must demonstrate an inability by the jury to separate and treat distinctively evidence that is relevant to each particular defendant on trial." *Id.* at 1525. Even where the defendant demonstrates some potential jury confusion, that potential for confusion must be balanced against society's need for speedy and efficient trials. *Id.*

■ A defendant does not have a right to a separate trial merely because the likelihood of acquittal would be greater if severance were granted. Rather, the denial of a motion for severance will not serve as a basis for reversal absent "a clear showing of specific and compelling prejudice resulting from a joint trial." *Id.* Thus, actual prejudice must be demonstrated where the defendants charge antagonistic defenses. *See, e.g., United States v. Vinson,* 606 F.2d 149, 154 (6th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980) ("Absent some indication that the antagonism between co-defendants misled or confused the jury, the mere fact that co-defendants blame each other does not compel severance"). Since Pack has demonstrated no actual prejudice, his severance argument must fail.

Pack argues that the district court erred in permitting a magistrate to accept the verdict in contravention of Federal Rule of Criminal Procedure 25. Federal Rule 25 provides:

> If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying that he has familiarized himself with the record of the trial, may proceed with and finish the trial.

In the present case, the district judge presided over the trial from voir dire to the commencement of the jury deliberations whereupon he delegated the magistrate to receive the verdict because of other pending matters. The magistrate performed no duties beyond the mechanics of receiving and reading the jury's verdict form upon the conclusion of its deliberations.

■ In accepting that verdict, the magistrate performed a function contemplated by Congress in enacting § 101 of the Federal Magistrates Act, 28 U.S.C. § 636. The Magistrates Act provides:

> A magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.

28 U.S.C. § 636(b)(3). The House report on the 1976 amendments to the Act specifically stated that 28 U.S.C. § 636(b)(3) "would permit, for example, a magistrate to ... accept returns of jury verdicts where the trial judge is unavailable." H.R. No. 94–1609, 94th Cong.2d Sess., *reprinted in* [1976] 5 U.S.Code Cong. & Ad.News 6162, 6172. In light of this clear legislative command, this court cannot conclude that the district court erred in permitting the magistrate to accept the verdict in this case.

■ Pack's assignment of error asserting that the district court abused its discretion by denying his motion for the appointment of a Certified Public Accountant to assist him in the preparation of his defense is also without merit. Pack argued that the services of an accountant were necessary to assist him in understanding stan-

dard accounting practices and tax preparation procedures. However, Pack was not charged with tax evasion. Rather, he was tried for willfully filing false returns. The only "tax" issues in the case were whether the cash that he received from undeposited checks and the cash that he received from the sale of his partnership interest constituted taxable income. An accountant could not have aided in resolving that issue in favor of Pack, since Section 61 of the Internal Revenue Code defines income as "all income from whatever source derived." 26 U.S.C. § 61. Thus, the district court did not abuse its discretion in denying Pack the services of an accountant to assist in his defense.

The remaining assignments of error advanced by Pack are without merit.

For the reasons stated above, the judgment of conviction entered against defendant Day on counts eight through eleven and the judgment of conviction against Pack on Counts five and seven are hereby REVERSED and REMANDED for a retrial. However, Pack's conviction on Count six of the indictment is AFFIRMED.