**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Garland ARNOLDT, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Garland ARNOLDT, a/k/a Shagg, Defendant–Appellant.**

**Nos. 89–5043, 89–5448.**

United States Court of Appeals, Fourth Circuit.

Argued June 7, 1990.

Decided Oct. 11, 1991.

---

Barbara H. Lupton, Hunt & Wilson, Charleston, W.Va., argued (Hunt L. Charach, Federal Public Defender, on brief), for defendant-appellant.

Hunter P. Smith, Jr., Asst. U.S. Atty., Charleston, W.Va., argued (Michael W. Carey, U.S. Atty., on brief), for plaintiff-appellee.

Before RUSSELL, WILKINSON, and WILKINS, Circuit Judges.

## OPINION

WILKINS, Circuit Judge:

The issues raised by appellant after convictions in two separate trials have been consolidated on appeal. For purposes of clarity the two trials are identified as *Arnoldt I* and *Arnoldt II*. In *Arnoldt I* appellant contends that the district court erred in designating a United States Magistrate [1] to preside over the return of the jury's verdict and in failing to make specific factual findings before imposing a fine. In *Arnoldt II* he asserts that his trial violated the double jeopardy clause of the fifth amendment to the United States Constitution and that the district court erred in finding that he was an organizer or leader of a criminal activity as defined in the sentencing guidelines. He also asserts that the district court erred in certain evidentiary rulings, in instructing the jury,

1. Pursuant to Act of December 1, 1990, Pub.L. No. 101–650, § 321, 104 Stat. 5117, United States Magistrates appointed under 28 U.S.C.A. § 631 (West Supp.1991) are now known as United States Magistrate Judges.

and in refusing to grant a mistrial. We affirm in part, reverse in part, and remand.

## I.

### A. *Arnoldt I*

Arnoldt was indicted in August 1988 for one count of conspiracy to distribute cocaine, 21 U.S.C.A. § 846 (West Supp.1991), four counts of distribution of cocaine, 21 U.S.C.A. § 841(a) (West 1981), one count of carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C.A. § 924(c)(1) (West Supp.1991), one count of possession of ammunition by a convicted felon, 18 U.S.C.A. § 922(g)(1) (West Supp. 1991), and one count of possession of a firearm by a convicted felon, *id.* He was convicted of the conspiracy count and three of the distribution counts. He was acquitted of one count of distribution and of carrying a firearm during and in relation to a drug trafficking crime.[2]

Following closing argument and the charge to the jury, the district judge announced that he was delegating the responsibility of presiding over the return of the jury's verdict to a United States Magistrate. Arnoldt did not object to this delegation. The magistrate subsequently received the verdict, polled the jury, and remanded the defendant to custody.

At the sentencing hearing, the district court determined that Arnoldt's offense level was 26, which, combined with criminal history category IV, produced a sentencing guidelines range of 92–115 months. The district court imposed a sentence of 98 months plus two concurrent 60–month sentences for the ammunition and firearm violations. Additionally, the district court imposed a $5,000 fine and a $300 special assessment.

### B. *Arnoldt II*

On January 10, 1989, Arnoldt was named in 14 counts of an 85 count indictment resulting from an investigation of the Pa-

gan Motorcycle Club. Count 1 alleged that Arnoldt violated 18 U.S.C.A. § 1962(c) (West 1984) of the Racketeer Influenced and Corrupt Organizations Act (RICO); Count 2 alleged that he participated in a RICO conspiracy, 18 U.S.C.A. § 1962(d) (West Supp.1991); Counts 7, 10, 13, and 71 alleged that he distributed controlled substances, 21 U.S.C.A. § 841(a)(1); and Counts 5, 6, 8, 9, 11, 12, 67, and 69 alleged that he engaged in interstate travel in aid of racketeering, 18 U.S.C.A. § 1952(a)(3) (West Supp.1991). The jury convicted Arnoldt of all counts.

Counts 5 through 13 represented conduct occurring before November 1, 1987 and thus were pre-guidelines offenses. Because the offenses represented in Counts 1, 2, 67, 69, and 71 were committed after November 1, 1987, the sentences were governed by the Sentencing Reform Act of 1984, 18 U.S.C.A. §§ 3551, *et seq.* (West 1985 & Supp.1991), and the sentencing guidelines promulgated by the United States Sentencing Commission. The guidelines counts were grouped pursuant to U.S.S.G. § 3D1.2.[3] The base offense level for the underlying activity (distribution of over 1,990 grams of cocaine) was 26. U.S.S.G. § 2D1.1(a)(3). This level was increased by 2 for possession of a firearm during the commission of a drug offense, U.S.S.G. § 2D1.1(b)(1), and by 2 for obstruction of justice, U.S.S.G. § 3C1.1. The district court also found that Arnoldt was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, U.S.S.G. § 3B1.1(a), and therefore further increased his offense level by 4, resulting in an adjusted offense level of 34. Offense level 34 combined with criminal history category V produced a sentencing guidelines range of 235–293 months. The district court sentenced Arnoldt to 292 months imprisonment.

As to the pre-guidelines counts, the court imposed five years imprisonment each on Counts 5, 6, 8, 9, 11, and 12 to be served

---

**2.** The district court had previously granted Arnoldt's motion to sever the possession of ammunition and firearm counts and Arnoldt was convicted of these counts at a subsequent trial.

**3.** All references are to the October, 1988 version of the *Guidelines Manual.*

concurrently with each other and with the guidelines sentence, 15 years imprisonment on Counts 7 and 10 to be served concurrently with each other and with the guidelines sentence, and 20 years imprisonment on Count 13 to be served concurrently with the guidelines sentence. In addition, the district court ordered the sentence imposed in *Arnoldt II* to be served concurrently with the sentence in *Arnoldt I*.

## II.

Arnoldt contends that designating a magistrate to preside over the return of the jury's verdict in *Arnoldt I* violated the Federal Magistrates Act, 28 U.S.C.A. § 631, *et seq.* (West Supp.1991), and Article III of the United States Constitution. He bases his argument on *Gomez v. United States* in which the Supreme Court unanimously held that the Federal Magistrates Act does not authorize a magistrate to preside over jury selection in a felony trial when a defendant objects. 490 U.S. 858, 875–76, 109 S.Ct. 2237, 2247–48, 104 L.Ed.2d 923 (1989). Because jury selection was not specifically designated as a permissible duty under the Act, the *Gomez* Court's inquiry was whether jury selection was authorized by the residual provision of the Act which provides that "[a] magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C.A. § 636(b)(3). The Court found that the Act did not authorize magistrates to preside over the selection of the jury, concluding that "[t]he absence of a specific reference to jury selection in the statute, or indeed, in the legislative history, persuades us that Congress did not intend the additional duties clause to embrace this function." 490 U.S. at 875–76, 109 S.Ct. at 2247 (footnote omitted). Thus, because the magistrate lacked authority to preside over jury selection in the face of a defendant's objection and because this error was not harm-less, the Court reversed Gomez's conviction.

The Court recently returned to this issue in *Peretz v. United States,* —— U.S. ——, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991).[4] In *Peretz,* the Court held that the "additional duties" clause of the Federal Magistrates Act permits the delegation of jury selection in a felony trial to a magistrate when the defendant consents to the delegation. *Id.* 111 S.Ct. at 2668. The Court also concluded that if a defendant fails to object to the delegation of jury selection to a magistrate, the defendant has no constitutional right to have an Article III judge preside. *Id.* at 2669.

■ Arnoldt first claims that allowing a magistrate to preside over the return of the jury's verdict violated his right to have an Article III judge preside over his felony trial. Recognizing that criminal defendants often waive substantive constitutional rights by their failure to make a timely assertion of the right, the *Peretz* Court held that because the defendant had "raised no objection to the judge's absence" he had waived his right to demand the presence of an Article III judge. *Id.* Similarly, Arnoldt failed to object to the delegation of authority to the magistrate to preside over the return of the jury's verdict and, therefore, waived any resulting constitutional error. We conclude that the reasoning of *Peretz* controls our disposition of this argument.

■ Next, Arnoldt asserts that the Federal Magistrates Act prohibits magistrates from presiding over the return of the jury's verdict. However, Arnoldt overlooks the specific approval of this function in the legislative history of the "additional duties" clause. A House Report on the 1976 amendments to the Act explained that the "additional duties" clause "would permit, for example, a magistrate to review default judgments, order the exoneration

---

4. Following oral argument of Arnoldt's appeals the Supreme Court granted certiorari in *Peretz* to address the questions of whether delegation of jury selection in a federal felony trial to a magistrate violated the Federal Magistrates Act or Article III when the defendant consented to the delegation and, if so, whether the defendant's consent constituted a waiver of the violation. —— U.S. ——, 111 S.Ct. 781, 112 L.Ed.2d 844 (1991). We held this opinion in abeyance pending a decision by the Supreme Court.

or forfeiture of bonds in criminal cases, *and accept returns of jury verdicts where the trial judge is unavailable.*" H.R.Rep. No. 1609, 94th Cong., 2d Sess. 12, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6162, 6172 (emphasis added). Heeding this "clear legislative command" when confronted with identical facts, the Sixth Circuit held that the district court did not err in permitting a magistrate to receive the verdict in a criminal case. *United States v. Day,* 789 F.2d 1217, 1224 (6th Cir.1986) ("In accepting that verdict, the magistrate performed a function contemplated by Congress...."); *see Kociemba v. G.D. Searle & Co.,* 707 F.Supp. 1517, 1529 (D.Minn. 1989) (citing H.R.Rep. No. 1609 and stating that "[d]efendant does not dispute the power of the Magistrate to accept the jury's verdict"). Moreover, because Arnoldt waived his constitutional right to have an Article III judge preside, no constitutional considerations preclude the district court from delegating this duty to the magistrate. *Peretz,* 111 S.Ct. at 2667; *Virgin Islands v. Williams,* 892 F.2d 305, 311 (3d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2211, 109 L.Ed.2d 537 (1990). Consequently, we find that the delegation of authority to preside over the return of the verdict qualifies as an "additional duty" under section 636(b)(3).

### III.

■ After the parties filed their briefs but prior to oral argument the Supreme Court announced its decision in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). At oral argument we requested that counsel provide supplemental briefing regarding the double jeopardy issue.[5]

### A.

The double jeopardy clause of the fifth amendment provides that a defendant shall not "be subject for the same offence to be twice put in jeopardy of life or limb." U.S.

Const. amend. V. The clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted). Traditionally, claims of double jeopardy were analyzed by reference to the analysis employed in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932): "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."

*Grady,* however, finding *Blockburger* afforded inadequate protection to defendants successively prosecuted, fashioned a new rule. In *Grady,* defendant Corbin drove his vehicle across the center line of a road, striking two oncoming vehicles. The driver of one of the oncoming vehicles subsequently died as a result of injuries sustained. Corbin pled guilty to misdemeanor driving while intoxicated and failing to keep right of the median and was sentenced to a $350 fine, a $10 surcharge, and a 6–month license revocation. Subsequently, a grand jury indicted Corbin for reckless manslaughter, vehicular manslaughter, criminally negligent homicide, reckless assault and driving while intoxicated. The Supreme Court affirmed the judgment of the New York Court of Appeals that prosecution of Corbin for these charges was prohibited by the double jeopardy clause. Observing that the *Blockburger* test was conceived " 'in the context of multiple punishments imposed in a single prosecution,' " *Grady,* 110 S.Ct. at 2090–91 (quoting *Garrett v. United States,* 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985)), the Court reasoned that *Blockburger* was forged without appreciation of the hazards

---

**5.** We disagree with the government's contention that Arnoldt waived the double jeopardy argument.

and concerns raised by successive prosecutions. *Id.* 110 S.Ct. at 2092.

[A] technical comparison of the elements of the two offenses as required by *Blockburger* does not protect defendants sufficiently from the burdens of multiple trials.... [A] subsequent prosecution must do more than merely survive the *Blockburger* test.... [T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

*Id.* 110 S.Ct. at 2093. Applying this test to the facts before it, the Court held that successive prosecution of Corbin, while permitted under *Blockburger,* nevertheless violated the double jeopardy clause, for "the State has admitted that it will prove the entirety of the conduct for which Corbin was convicted—driving while intoxicated and failing to keep right of the median—to establish essential elements of the homicide and assault offenses." *Id.* at 2094.

### B.

Arnoldt was indicted in Count 1 of *Arnoldt II* for a RICO violation under 18 U.S.C.A. § 1962(c). The indictment alleged that Arnoldt committed eight predicate acts. The first four predicate acts constituted four counts of drug-related conduct for which Arnoldt had been convicted in *Arnoldt I* and which occurred between January and June 1988. The remaining four predicate acts incorporated by reference four substantive counts in *Arnoldt II*— three counts alleging cocaine distribution occurring from April to June 1986 and one count alleging interstate travel in aid of racketeering occurring on June 12, 1988.[6]

Arnoldt asserts that use of his *Arnoldt I* convictions as predicate acts in a subsequent RICO prosecution violates the double jeopardy clause. He contends that *Grady* compels reversal of the subsequent RICO conviction because to establish an essential

element of the RICO count (*i.e.,* the predicate acts), the government proved conduct constituting offenses for which he had been convicted in *Arnoldt I.*

It is undisputed that under the circumstances here the successive prosecution of Arnoldt satisfies the *Blockburger* test. *See, e.g., United States v. Grayson,* 795 F.2d 278, 283 (3d Cir.1986) ("successive prosecutions for a RICO offense and its underlying predicate offenses are not inconsistent with the double jeopardy clause"), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 927, 93 L.Ed.2d 978, 481 U.S. 1018, 107 S.Ct. 1899, 95 L.Ed.2d 505 (1987); *accord United States v. Schell,* 775 F.2d 559, 568 (4th Cir.1985), *cert. denied,* 475 U.S. 1098, 106 S.Ct. 1498, 89 L.Ed.2d 898 (1986); *United States v. Boldin,* 772 F.2d 719, 728–30 (11th Cir.1985), *modified on other grounds,* 779 F.2d 618, *cert. denied,* 475 U.S. 1048, 1098, 1110, 106 S.Ct. 1269, 1498, 1520, 89 L.Ed.2d 577 (1986); *United States v. Black,* 759 F.2d 71, 73–74 (D.C.Cir.1985) (per curiam); *United States v. Licavoli,* 725 F.2d 1040, 1049–50 (6th Cir.), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984); *United States v. Phillips,* 664 F.2d 971, 1009 n. 55 (5th Cir. Unit B 1981) (dicta), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982); *United States v. Solano,* 605 F.2d 1141 (9th Cir.1979), *cert. denied,* 444 U.S. 1020, 100 S.Ct. 677, 62 L.Ed.2d 652 (1980).

In *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), the Court held that it was not a violation of the double jeopardy clause to prosecute a continuing criminal enterprise (CCE) offense, *see* 21 U.S.C.A. § 848 (West Supp. 1991), after a prior conviction for one of the predicate offenses. The defendant in *Garrett* was charged in a March 1981 multi-count drug indictment in the Western District of Washington. He pled guilty to one count of importation of marijuana. In July 1981 he was indicted in the Northern District of Florida on several drug counts, including a count for engaging in a CCE

---

**6.** Because special interrogatories were not submitted to the jury it is impossible to know the predicate acts on which the jury relied in finding Arnoldt guilty of violating RICO.

from January 1976 to July 1981. At trial, evidence of conduct underlying the defendant's prior marijuana importation conviction was introduced to prove one of the three predicate offenses that must be shown to prove a CCE violation.

The Supreme Court found dubious the defendant's argument that the importation conviction was a lesser included offense of the CCE. The Court observed that the lesser included offense doctrine is associated with *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), which held that when the misdemeanor of joyriding was a lesser included offense in the felony of auto theft, a prosecution for the misdemeanor barred a prosecution for the felony. However, the Court in *Garrett* was unimpressed with the defendant's reliance on *Brown:*

> Obviously the conduct in which Garrett was charged with engaging in the [CCE] indictment, when compared with that with which he was charged in the Washington indictment, does not lend itself to the simple analogy of a single course of conduct—stealing a car—comprising a lesser included misdemeanor within a felony. Here the continuing criminal enterprise was alleged to have spanned more than five years; the acts charged in the Washington indictment were alleged to have occurred on single days in 1979 and 1980.... Whenever it was during the 5½-year period alleged in the indictment that Garrett committed the first of the three predicate offenses required to form the basis for a CCE prosecution, it could not then have been said with any certain-

ty that he would necessarily go ahead and commit the other violations required to render him liable on a CCE charge. Every minute that Nathaniel Brown drove or possessed the stolen automobile he was simultaneously committing both the lesser included misdemeanor and the greater felony, but the same simply is not true of Garrett.... These significant differences caution against ready transposition of the "lesser included offense" principles of double jeopardy from the classically simple situation presented in *Brown* to the multilayered conduct, both as to time and to place, involved in this case.

*Garrett*, 471 U.S. at 788–89, 105 S.Ct. at 2416–17.[7] The government maintains that double jeopardy analysis for violations of complex, compound statutes is unaffected by *Grady* and remains governed by *Blockburger* and *Garrett.*

We believe the principles enunciated in *Grady* govern the paradigmatic "single course of conduct" case, but that prosecutions under statutes such as RICO and CCE—statutes targeted at "multilayered" instances of criminal conduct invariably occurring at different places and times—call for a calculus reflecting the concerns expressed in *Garrett.* The Third and Eleventh Circuits have adopted a nearly identical interpretation of *Grady*, distinguishing successive prosecutions for RICO and its underlying predicates, which these courts held to be constitutionally permissible, from *Brown* and *Grady*, which involved a single course of conduct. *United States v.*

7. The Court went on, however, to assume that Garrett's Washington offense was a lesser included offense in order to reject his double jeopardy claim on the ground that the CCE offense had not been completed at the time Garrett was indicted in Washington. *Id.* 111 S.Ct. at 791–93. The Court affirmed Garrett's convictions, rebuffing the double jeopardy challenge on the basis of *Diaz v. United States,* 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912), which involved an initial prosecution for assault and battery followed by a prosecution for homicide when the victim eventually died from injuries inflicted in the course of the assault. The Court in *Diaz* rejected the double jeopardy claim, holding that the two prosecutions were not for the same offense. *Diaz* was cited in

*Grady* as a permissible exception to the "traditional" double jeopardy rule applicable " 'where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence.' " *Grady,* 110 S.Ct. at 2090 n. 7 (quoting *Brown v. Ohio,* 432 U.S. 161, 169 n. 7, 97 S.Ct. 2221, 2227 n. 7, 53 L.Ed.2d 187 (1977)). The *Diaz* exception is inapplicable here since arguably Arnoldt's RICO offense was complete at the time of the *Arnoldt I* trial because he had already committed more than two predicate acts. Moreover, at the time the indictment in *Arnoldt I* was returned, all of the predicate acts had occurred.

*Pungitore,* 910 F.2d 1084, 1111 (3d Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2009, 2010, 2011, 114 L.Ed.2d 98 (1991); *United States v. Gonzalez,* 921 F.2d 1530, 1535–39 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 178, 116 L.Ed.2d 140 (1991).

We recognize that *Grady* does not limit itself to a specific class of crimes. We also appreciate the bedrock principle underlying the double jeopardy clause itself: "that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity...." *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). Despite these weighty concerns, we believe a contrary result would unduly infringe prosecutorial discretion and effectively "force the Government's hand" with respect to prosecution under RICO. *Cf. Garrett,* 471 U.S. at 790, 105 S.Ct. at 2417. We do not believe the Supreme Court intended *Grady* to compel such a result. When grappling with a complex, multilayered-conduct statute such as RICO, the government must be given reasonable discretion in setting and pursuing its strategy. Indeed, here the most recent alleged predicate act occurred before, but was not discovered until after, the date of the *Arnoldt I* indictment. Without ample discretion, the government would be forced to either proceed against a defendant for violations that might later serve as predicate acts and foreclose a RICO prosecution in the future or allow predicate acts to go unpunished in anticipation that at some future time the RICO elements would coalesce.

Thus, in the context of successive prosecutions for a substantive RICO violation and for the predicate crimes used to prove RICO, the double jeopardy analysis is controlled by *Garrett.*[8] *See Pungitore,* 910 F.2d at 1109 ("[T]he reasoning in [*Grady*] logically extends only to offenses arising from a single discrete event. We do not think that the Supreme Court meant to imply that the double jeopardy clause forecloses successive prosecutions in cases of compound-complex felonies such as RICO, which involve several criminal acts occurring at different times in different places.").

## IV.

█ In *Arnoldt I,* the district court imposed a fine of $5,000 payable in monthly installments. Arnoldt contends the district court failed to adequately consider the factors set forth in 18 U.S.C.A. § 3572 (West Supp.1991). *Cf.* U.S.S.G. § 5E4.2(d) (listing factors court "shall consider" in determining amount of fine). In *United States v. Harvey,* 885 F.2d 181 (4th Cir. 1989), we vacated and remanded for reconsideration of the fine imposed because the district court failed to make specific findings with regard to the factors listed in the predecessor statute to section 3572. Because the district court imposed the fine without complying with *Harvey,* we vacate the sentence and remand for consideration of those statutory factors.

8. This court recently addressed the application of *Grady* to a prosecution for conspiracy to distribute cocaine and heroin under 21 U.S.C.A. § 846 (West Supp.1991) in which evidence of an episode of defendant's possession of cocaine and heroin that had formed the basis of a previous prosecution for possession with intent to distribute in violation of 21 U.S.C.A. § 841(a)(1) (West 1981) was introduced as evidence of defendant's participation in the conspiracy. *United States v. Clark,* 928 F.2d 639 (4th Cir.1991). Concluding that the evidence of the prior possession did not establish an element of the second offense, the court held that the subsequent prosecution was not a double jeopardy violation. *Id.* at 642. Similarly, the conduct prosecuted in *Arnoldt I* was used as evidence of the "pattern of racketeering activity" element of the RICO offense, *see United States v. Hooker,* 841 F.2d 1225, 1227 (4th Cir.1988) but could not, standing alone, establish an essential element of the RICO offense, *see Clark,* 928 F.2d at 642, i.e. "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity," *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 2900–01, 106 L.Ed.2d 195 (1989) (emphasis omitted). Moreover, even if the argument that the prior convictions alone established the RICO pattern element was deemed persuasive, we conclude that the analysis in *Garrett* applies to subsequent prosecutions of multilayered offenses.

## V.

Arnoldt next contends that the district court erred in finding that he was an organizer or leader of a criminal activity and increasing his offense level by 4. *See* U.S.S.G. § 3B1.1(a). A determination by the district court of a defendant's role in the offense is a factual determination and is thus reviewable under the clearly erroneous standard. *United States v. Daughtrey*, 874 F.2d 213, 218 (4th Cir.1989). The sentencing guidelines provide that in determining whether a defendant is an organizer a court should consider factors that include:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. (n. 3).

At the sentencing hearing the district court determined that Arnoldt was an organizer based on his perceived membership in the "mother club," the governing body of the Pagan Motorcycle Club, and his alleged presidency of the Kentucky chapter of the Pagans. However, because the government conceded at oral argument that Arnoldt was not a member of the mother club, we remand on this issue. Because the record was not adequately developed we offer no opinion on the significance of Arnoldt's alleged presidency of the local Kentucky chapter.

## VI.

In conclusion, we affirm Arnoldt's convictions and find his remaining contentions to be without merit. However, we vacate the sentence imposed in *Arnoldt I* and remand for consideration of the statutory factors. We also vacate the guidelines sentence imposed in *Arnoldt II* and remand for a determination of Arnoldt's role in the offense.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.