946 F.2d 896
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John PHILLIPS, Defendant-Appellant.
 No. 90-1545.
 United States Court of Appeals, Sixth Circuit.
 Oct. 21, 1991.
 
 Before BOYCE F. MARTIN, Jr., RALPH B. GUY, Jr. and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant John C. Phillips appeals his jury conviction for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and conspiracy to import cocaine in violation of 21 U.S.C. § 963. Phillips raises three grounds for reversal: (1) the district court erred in failing to grant him a separate trial; (2) the district court erred in excluding proposed "habit" testimony under Fed.R.Evid. 406; (3) the district court erred in not granting a mistrial after a dictionary was discovered in the jury room. Because we find Phillips should have been granted a separate trial, we reverse.
 
 
 2
 Phillips was indicted, along with Edwin and Diane Turner, and charged with participating in a massive conspiracy to import cocaine from Columbia through an island in the Bahamas to Florida for ultimate distribution in southeastern Michigan and northwestern Ohio. Edwin and Diane Turner operated Hawk's Nest resort on Cat Island in the Bahamas. The resort was used as a dropping-off point for cocaine from Columbia on its way to the United States. The resort had a small airstrip and a marina, which made it an ideal location for transferring drugs from airplanes to boats. Typically, cocaine would be flown in from Columbia and then loaded onto fishing boats and transported to private residences on the Florida coast. The Turners allegedly directed the landing of these planes and received payment for each plane which landed on their airstrip. Phillips, who worked at the Hawk's Nest resort, was allegedly involved with the Turners in the drug smuggling activity on the island.
 
 
 3
 Prior to trial, Phillips moved to sever his trial from the Turners claiming, inter alia, that the Turners were prepared to give exculpatory testimony on his behalf if they were granted judicial "use immunity." After hearing arguments and the assertions from counsel that the Turners would testify to Phillips' non-involvement, the district court denied the motion to sever without prejudice to Phillips' right to file affidavits from the Turners specifying the substance of their proposed testimony. On the eve of trial, the court revisited the issue of severance. Phillips indicated to the court that he was having difficulty in obtaining affidavits from the Turners. The court agreed to permit Phillips to submit an unsworn statement by the Turners indicating the substance of their proposed testimony. The following morning, Phillips produced the following signed statement of the Turners to the court:
 
 
 4
 C.J. Phillips had no involvement with off loading drugs on Hawks Nest or anywhere else, receiving or collecting money for drug off loading at Hawks Nest, or in Florida, and never acted as a go-between for any drug transactions of which we are aware. His involvement at Hawks Nest was legitimately related to piloting passengers and supplies for the resort.
 
 
 5
 We have no knowledge of John Cheney off loading cocaine at Hawks Nest and to the best of our knowledge he did not receive any cocaine or money. All of this is true to the best of our knowledge, information and belief.
 
 
 6
 The district court again heard arguments concerning Phillips' motion to sever. The court informed all counsel that if the motion for severance were granted, Phillips would be tried after the Turners in order to relieve any fifth amendment concerns of the Turners. After reviewing the statement of the Turners, the court concluded that severance was not necessary because the Turners could only testify "to a negative, not to a positive ... that to their knowledge he wasn't involved in any illicit activities on the island." The court determined that such testimony was not sufficiently exculpatory to require a separate trial.
 
 
 7
 A district court's denial of severance will be overruled on appeal only for clear abuse of discretion. United States v. Causey, 834 F.2d 1277, 1287 (6th Cir.1987), cert. denied, 486 U.S. 1034 (1988) (citations omitted). Courts employ a stringent test in ruling on a motion for severance in order to obtain a co-defendant's testimony. The defendant seeking severance "must demonstrate: (1) a bona fide need for the testimony, (2) the substance of the testimony, (3) its exculpatory nature and effect, and (4) that the codefendant will in fact testify if the cases are severed." Id. (quoting United States v. Butler, 611 F.2d 1066, 1071 (5th Cir.), cert. denied, 449 U.S. 830 (1980)).
 
 
 8
 The government argues that Phillips failed to meet this test because the Turners did not ever affirm that they would in fact testify on Phillips' behalf at a separate trial. Moreover, given the fact that the Turners' testimony, at most, would have implied the non-existence, rather than the existence, of a purported "fact" (i.e., we have no personal knowledge that Phillips engaged in criminal activities; therefore, he must not have done so), the district court properly refused to grant Phillips a separate trial.
 
 
 9
 The Turners never directly indicated to the court that they were willing to testify on behalf of Phillips. Phillips, however, in his supplemental motion for severance, represented that "[i]n speaking with the attorneys for co-defendants Edwin Leon Turner and Diane Turner ... this writer was informed their clients would testify, if not for potentially incriminating themselves at a joint trial with Mr. Phillips...." In the same document, Phillips argues that the Turners should be granted use immunity for their testimony relating to Phillips. Quite understandably, the Turners were concerned about self incrimination because they would be subject to cross-examination if they were to testify on behalf of Phillips.
 
 
 10
 The government argues that these representations were not sufficient to establish the Turners would in fact testify on behalf of Phillips. In United States v. Whitley, 734 F.2d 1129 (6th Cir.1984), this court commented that:
 
 
 11
 [t]o justify a separate trial, [the defendant] must make a showing that [the co-defendant] would be willing to testify in his behalf. This would require a showing that [the co-defendant] would not invoke his Fifth Amendment privilege, and that the testimony would be exculpatory.
 
 
 12
 Id. at 1139 (citation omitted). Similarly, in United States v. Blanco, 844 F.2d 344 (6th Cir.), cert. denied, 486 U.S. 1046 (1988) this court noted that "a criminal defendant may justify a separate trial where he can show that a co-defendant would be willing to testify for him, would not invoke the Fifth Amendment privilege, and would exculpate the defendant." Id. at 352 (citation omitted). In Blanco, the court determined that the co-defendant's purported waiver of his fifth amendment privilege was illusory since the waiver was conditioned on his being tried first. Id.
 
 
 13
 In the present case, we believe that Phillips made a sufficient showing of the Turners' willingness to testify. Although the Turners never agreed to waive their fifth amendment privilege, such a waiver was unnecessary because the trial judge had already determined that he would try the Turners before Phillips if severance were granted. Thus, the Turners' concerns about self-incrimination were eliminated. Furthermore, the trial judge was satisfied that Phillips had made a sufficient showing concerning the Turners' willingness to testify. At this point, it would be unfair to hold Phillips to a higher level of proof.
 
 
 14
 The district court denied severance because it felt that the Turners' proposed testimony did not sufficiently exculpate Phillips. We disagree. As we read the record, the government sought to prove that Phillips, who was employed by the Turners, was actively involved with the Turners in the drug smuggling activities on the island. For example, the government solicited testimony which indicated that Phillips had accompanied Edwin Turner on a number of occasions when Turner went to Florida to receive payment for the use of the resort's airstrip. The government also introduced testimony which characterized Phillips as the "contact" for Diane Turner when she was attempting to distribute six kilograms of cocaine in Florida. Because a significant amount of the government's proof concerning Phillips' involvement in the drug conspiracy stemmed from his relationship with the Turners, the proposed testimony of the Turners could have been highly exculpatory. Testimony does not have to insure acquittal to be considered exculpatory.
 
 
 15
 In fact, considering the vast amount of testimony put forth by the government portraying Phillips as the Turners' right-hand man, Phillips probably could not have found a better witness to testify as to his innocence. The proposed testimony of the Turners would have been of limited exculpatory value if, for example, the Turners only came in contact with Phillips on a relatively few occasions during the conspiracy. However, because the Turners and Phillips were in close association during the alleged conspiracy, the Turners' proposed testimony was sufficiently exculpatory to warrant severance. Because Phillips was denied the opportunity of presenting this testimony at his trial, we reverse his conviction and remand this case to the district court for a new trial.
 
 
 16
 Because we find that Phillips is entitled to a new trial based on the district court's failure to grant Phillips a separate trial, we decline to address Phillips' remaining arguments at this time.
 
 
 17
 RALPH B. GUY, Jr., Circuit Judge, dissenting.
 
 
 18
 Phillips contends that he was denied a fair trial because of his joinder with the Turners. Persons jointly indicted normally should be tried together. United States v. Gallo, 763 F.2d 1504, 1525 (6th Cir.1985), cert. denied, 475 U.S. 1017 (1986). The district court's denial of a motion for severance will be overruled on appeal only for a clear abuse of discretion, United States v. Causey, 834 F.2d 1277, 1287 (6th Cir.1987), cert. denied, 486 U.S. 1034 (1988), and "the denial of a motion for severance will not serve as a basis for reversal absent a clear showing of specific and compelling prejudice resulting from a joint trial.' " United States v. Day, 789 F.2d 1217, 1224 (6th Cir.1986) (quoting Gallo, 753 F.2d at 1525)).
 
 
 19
 Phillips argues that the refusal to sever his trial from the trial of the Turners was reversible error because the Turners were thereby prevented from providing exculpatory testimony in his favor. In Causey, we stated:
 
 
 20
 A "stringent test is to be employed when ruling on a motion for severance in order to obtain a codefendant's testimony." The defendant "must demonstrate: (1) a bona fide need for the testimony, (2) the substance of the testimony, (3) its exculpatory nature and effect, and (4) that the codefendant will in fact testify if the cases are severed."
 
 
 21
 834 F.2d at 1287 (citations omitted).
 
 
 22
 Although the Turners represented in an unsworn statement that Phillips was not involved in "any drug transactions that we are aware," at no time did the Turners affirm that they would in fact testify on Phillips' behalf if a separate trial were granted. Further, even if the Turners' statement could be considered an offer to testify, their proffered testimony would be essentially that they did not observe Phillips doing anything illegal, which has little exculpatory effect under the circumstances of this case. Finally, Phillips fails to make an affirmative showing of prejudice, as numerous other co-conspirators testified that Phillips was actively and integrally involved in the charged conspiracy to import and distribute cocaine. Therefore, the district court did not abuse its discretion in refusing to grant the motion for severance.