McKEOWN, Circuit Judge:
 

 Isidro Gomez-Lepe was convicted of conspiracy to distribute a controlled substance, 21 U.S.C. § 846, and possession with intent to distribute a controlled substance and/or aiding and abetting, 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2. On appeal, he maintains that the magistrate judge’s presiding over a jury poll that called into question jury unanimity exceeded the judge’s statutory authority under the Federal Magistrates Act (the “Act”), 28 U.S.C. § 636. He also argues that the polling process violated Article III of the Constitution and resulted in a verdict that was not unanimous.
 
 [2]
 
 The district court, finding that the magistrate did not exceed his authority, denied Gomez-Lepe’s motion for a new trial. We disagree. Under the circumstances of this case, affirmative consent was required for the magistrate judge to proceed and thus he exceeded his authority under the “additional duties” clause of the Act. 28 U.S.C. § 636(b)(3). Accordingly, we reverse and remand for a new trial. In light of this holding, we need not reach the constitutional issue or the claim of jury coercion.
 

 BACKGROUND
 

 Gomez-Lepe was arrested during a cocaine buy-and-bust. He was tried and found guilty by a jury in Yakima, Washington, with a district judge from Spokane, Washington presiding. After a two day trial, the jury returned the next day for deliberations. At the conclusion of their
 
 *626
 
 deliberations, the magistrate judge informed the jurors that the district judge had returned to Spokane and had asked him to receive the verdict. The parties apparently had no prior notice of the district judge’s unavailability, nor does the record reflect consent by either party to the procedure. After the clerk read the verdict, the magistrate judge confirmed the verdict with the foreperson and then with the entire jury collectively:
 

 THE COURT: Miss Chartrand, was the verdict as read the verdict of the jury and each member thereof?
 

 JUROR NO. 1: Yes, sir.
 

 THE COURT: I would address the following question to the members of the jury. Was the verdict as read the verdict of the jury and each member thereof?
 

 JURY: Yes.
 

 According to defense counsel, at least two jurors were visibly upset, and defense counsel requested the court to poll the jury individually. The first six members of the jury acknowledged the recorded verdict. When the magistrate judge reached Juror No. 8,
 
 [3]
 
 Rhonda Connell, the following exchange occurred:
 

 THE COURT: Ms. Connell, was the verdict as read your verdict and the verdict of the jury?
 

 JUROR NO. 8: (No response.)
 

 THE COURT: Do I have the wrong—
 

 THE CLERK: No, you have the right name.
 

 THE COURT: Ms. Rhonda Connell?
 

 JUROR NO. 8: I don’t know what to say.
 

 THE COURT: I will pass momentarily to the next party.
 

 At this point, the magistrate judge polled the remaining five members of the jury, who confirmed their verdict, and then returned to Ms. Connell who once again stated “I don’t know what to say”:
 

 THE COURT: I want to come back at this time to Ms. Rhonda Connell. I would ask at this time: Is the verdict as read your verdict?
 

 JUROR NO. 8: I don’t know what to say.
 

 THE COURT: Was it the verdict of the jurors or do you also have problems answering that issue?
 

 JUROR NO. 8: It was the verdict of the jurors.
 

 THE COURT: It was the verdict of the jury?
 

 JUROR NO. 8: (Nods head affirmatively-)
 

 THE COURT: Did you join in that verdict?
 

 JUROR NO. 8: Yes.
 

 THE COURT: I have at this time completed the polling.
 

 Defense counsel then requested that the magistrate judge rephrase the question because Ms. Connell appeared troubled. The magistrate judge returned once more to Ms. Connell:
 

 THE COURT: I would indicate as follows: I believe that that question was asked and answered, but I would ask just to reassert it. Is it your verdict?
 

 JUROR NO. 8: Yes.
 

 THE COURT: I believe the answer is the case that it has been answered. That concludes the polling of the jury.
 

 Gomez-Lepe subsequently moved for a new trial on grounds that the magistrate judge exceeded his constitutional and statutory authority in undertaking the questioning and that the verdict was not unanimous. The district court denied the motion based on its finding that the magistrate judge was within his statutory authority to conduct the poll and that the juror’s response, although perhaps indicative of emotion or confusion, did not suggest lack of unanimity.
 

 
 *627
 
 DISCUSSION
 

 The issue before us is one of first impression: whether, in the absence of the defendant’s consent, the magistrate judge’s presiding over a jury poll in a felony trial when a juror’s response calls into question the unanimity of the jury falls within the “additional duties” delegated to a magistrate under § 636(b)(3) of the Act.
 

 Consideration of the scope of a magistrate judge’s authority in felony matters is not a new subject. As we held in
 
 United States v. Foster,
 
 57 F.3d 727, 732 (9th Cir.1995),
 
 rev’d on other grounds,
 
 133 F.3d 704 (1998) (en banc),
 
 vacated as to that ground,
 
 525 U.S. 801, 119 S.Ct. 32, 142 L.Ed.2d 24 (1998):
 

 While it is somewhat troubling that the trial judge assigned the task of accepting the verdict to a magistrate judge without prior notice to the parties, the magistrate judge in this case did nothing more than accept and file the verdict. ... [Acceptance and filing of a verdict constitute ministerial tasks which have no effect on the outcome of the case. We express no opinion, however, on whether the parties’ consent might be required if a magistrate judge is called upon to take any additional action (such as answering a jury question) while presiding over jury deliberations.
 

 We now address the question left unanswered in
 
 Foster,
 
 namely, whether the “additional action” taken here, beyond the “acceptance and filing of a verdict,” is consistent with the magistrate judge’s statutory authority. We review de novo the delegation of authority to a magistrate judge.
 
 United States v. Carr,
 
 18 F.3d 738, 740 (9th Cir.1994).
 

 I. Authority of the Magistrate Judge
 

 Central to our analysis is an understanding of the Act and the cases interpreting it. As the Supreme Court has explained:
 

 Since its enactment in 1968, the Federal Magistrates Act has permitted district courts to assign magistrates certain described powers and duties, as well as “such additional duties as are not inconsistent with the Constitution and laws of the United States.”
 

 Gomez v. United States,
 
 490 U.S. 858, 859-60, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989). The Act has been amended on several occasions, including significant amendments in 1976, to broaden the scope of power that magistrate judges may exercise.
 
 See id.
 
 at 865-71, 109 S.Ct. 2237 (outlining evolution of Act). The Act now gives magistrate judges “described power and duties” in the following areas: civil trials with the parties’ consent; misdemeanor trials and sentencing with the defendant’s consent; certain civil and criminal pretrial matters; and service as a special master. 28 U.S.C. § 636(a), (b)(l)-(2), (c).
 

 In addition to these enumerated duties, the Act contains a separate catch-all provision providing that “[a] magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.” 28 U.S.C. § 636(b)(3). Although acceptance of jury verdicts is not a specifically described duty, the legislative history lists accepting “returns of jury verdicts” as an example of an additional duty.
 
 [4]
 

 See
 
 H.R. Rep. No. 94-1609 (1976),
 
 reprinted in
 
 1976 U.S.C.C.A.N. 6162, 6172 (“Under [§ 636(b)(3) ], the district courts would remain free to experiment in the assignment of other duties to magistrates which may not necessarily be included in the broad
 
 *628
 
 category of ‘pretrial matters.’ This subsection would permit, for example, a magistrate to review default judgments, order the exoneration or forfeiture of bonds in criminal cases, and accept returns of jury verdicts where the trial judge is unavailable.”). The legislative history does not, however, discuss the more significant oversight of jury deliberations that occurred here. Thus, this case turns on whether the circumstances here fit within the “additional duties” provision of the Act.
 

 Since the 1976 amendments, the Supreme Court on two occasions has considered in detail the scope of magistrate judge authority under the “additional duties” clause.
 
 See Gomez,
 
 490 U.S. 858, 109 S.Ct. 2237;
 
 Peretz v. United States,
 
 501 U.S. 923, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991). Both
 
 Gomez
 
 and
 
 Peretz
 
 involved the authority of a magistrate judge to preside over jury selection and, although not directly controlling, are highly instructive to our inquiry. In
 
 Gomez,
 
 the magistrate judge conducted voir dire over the objection of defense counsel. 490 U.S. at 860, 109 S.Ct. 2237. The Supreme Court cautioned that although § 636(b)(3)’s grant of authority can be read broadly,
 

 [w]hen a statute creates an office to which it assigns specific duties, those duties outline the attributes of the office. Any additional duties performed pursuant to a general authorization in the statute reasonably should bear some relation to the specified duties.
 

 Id.
 
 at 864, 109 S.Ct. 2237. The Court held that the magistrate judge’s selection of a jury in a felony trial exceeded the authority delegated by § 636(b)(3).
 

 Two years later, the Court revisited this issue in
 
 Peretz,
 
 expressing a willingness to read the clause more expansively where consent was present. Unlike in
 
 Gomez,
 
 in
 
 Peretz
 
 defense counsel “affirmatively welcomed” the role of the magistrate judge in jury selection, 501 U.S. at 932, 111 S.Ct. 2661 and unequivocally consented on the record on behalf of his client,
 
 id.
 
 at 925, 111 S.Ct. 2661. The Court concluded that Article III and § 636(b)(3) permit a magistrate judge to supervise jury selection in a felony trial where the parties consent: “The considerations that led to our holding in
 
 Gomez
 
 do not lead to the conclusion that a magistrate’s ‘additional duties’ may not include supervision of jury selection when the defendant has consented.”
 
 Id,
 
 at 932, 111 S.Ct. 2661.
 

 As
 
 Gomez
 
 and
 
 Peretz
 
 make clear, consent is a key issue in determining whether the duty in question is one that may properly be delegated to a magistrate judge. Tracing the evolution of the Act and contrasting the clear consent in
 
 Peretz
 
 with the defendant’s objection in
 
 Gomez,
 
 the Court in
 
 Peretz
 
 emphasized that:
 

 the structure and purpose of the Federal Magistrates Act convince us that supervision of voir dire in a felony proceeding is an additional duty that may be delegated to a magistrate under 28 U.S.C. § 636(b)(3) if the litigants consent. The Act evinces a congressional belief that magistrates are well qualified to handle matters of similar importance to jury selection but conditions their authority to accept such responsibilities on the consent of the parties.
 

 Id.
 
 at 935, 111 S.Ct. 2661 (footnote omitted).
 

 II. Subsidiary Matter or Critical Stage?
 

 Drawing from
 
 Gomez
 
 and
 
 Peretz,
 
 we have developed a framework for analyzing the scope of the catch-all provision. We begin with the premise that “the Supreme Court’s interpretation of § 636(b)(3) establishes the presence or absence of consent as the most important factor in determining what the section encompasses.”
 
 NLRB v. A-Plus Roofing, Inc.,
 
 39 F.3d 1410, 1415 (9th Cir.1994) (holding that a magistrate judge did not have authority under § 636(b)(3) to conduct criminal contempt trial without consent of defendant). It is by no means, however, the only factor relevant to that determination. We must
 
 *629
 
 also determine whether the matter at issue is “subsidiary” or a “critical stage” of the proceedings:
 

 In
 
 Carr,
 
 we held that in a felony case defendant’s consent is
 
 not
 
 required only where the magistrate judge is handling “subsidiary matters.” In
 
 Foster,
 
 we held that, where a magistrate judge is handling a “critical stage” of a criminal proceeding, defendant’s consent is required to fall within the “catch-all” provision of § 636(b)(3).
 

 United States v. Colacurcio,
 
 84 F.3d 326, 333 (9th Cir.1996) (citations omitted). When the defendant has not consented to magistrate participation in a critical stage of the proceedings, we construe § 636(b)(3) narrowly.
 
 See id.
 
 at 332. The issue then is whether a jury poll that calls into question jury unanimity is merely a subsidiary matter or a critical stage of the proceeding.
 

 We have not had frequent occasion to distinguish between subsidiary matters and critical stages and no bright-line test currently exists.
 
 Colacurcio
 
 sheds some light on how to perform the inquiry: “There is no question that a probation revocation hearing is a “critical stage” of a criminal proceeding.... [A] probation revocation hearing seriously affects the defendant’s rights' — the defendant’s probation may be revoked and a jail sentence may be imposed.” 84 F.3d at 333. We held that such a critical stage proceeding required the defendant’s consent.
 
 Foster
 
 offers additional guidance: “In determining whether [an] additional duty constitutes a subsidiary matter, we consider the degree of responsibility conferred upon the magistrate judge as well as the extent of interaction between the judge and jury.” 57 F.3d at 731. We concluded in
 
 Foster
 
 that simply accepting and filing a jury verdict, without more, was a ministerial, subsidiary matter that did not require consent. This came as no surprise given that the legislative history specifically identifies this task as falling within the catch-all provision.
 

 Colacurcio
 
 and
 
 Foster
 
 suggest, therefore, that the distinction between subsidiary matters and critical stages turns on the court’s balancing of the defendant’s rights at stake, the discretion exercised and the degree of responsibility conferred, and the nature of the interactions between the judge and jury. In light of these factors, this court and other circuits have consistently upheld a magistrate’s authority to undertake ministerial matters related to the jury, such as simple acceptance of a verdict, readback of testimony and the like, that did not involve judgment calls or discretionary decisions.
 
 See, e.g., Carr,
 
 18 F.3d at 740 (read-back of testimony was subsidiary matter because magistrate judge “was not required to interact or communicate with jury”);
 
 Allen v. United States,
 
 921 F.2d 78, 80 (6th Cir.1990) (condoning magistrate judge’s reading of jury instructions because he “made no decisions or rulings” but rather “merely read the instructions which had already been prepared by the judge”);
 
 United States v. Day,
 
 789 F.2d 1217, 1224 (6th Cir.1986) (“The magistrate performed no duties beyond the mechanics of receiving and reading the jury’s verdict form upon the conclusion of its deliberations.”).
 

 By contrast, where discretion is exercised, the scope of magistrate judge’s authority is construed more narrowly.
 
 See Harris v. Folk Constr. Co.,
 
 138 F.3d 365, 371 (8th Cir.1998) (“[Ajbsent clear and unambiguous consent of the affected parties, a district judge may not delegate, pursuant to § 636(b)(3), duties that require a final and independent determination of fact or law by the magistrate judge.”). Accordingly, we have little difficulty holding that a jury poll that calls into question the jury’s unanimity is, no less than voir dire, a critical stage of a criminal proceeding.
 
 [5]
 
 
 *630
 
 As in
 
 Colacurcio,
 
 this process “seriously affects the defendant’s rights.” 84 F.3d at 333. To deem this exercise of judicial authority “ministerial” or “subsidiary” would undermine the fundamental role that a unanimous jury verdict occupies in a criminal trial.
 

 The right to a unanimous jury verdict in a federal criminal trial is rooted in the Sixth Amendment.
 
 See United States v. Savage,
 
 67 F.3d 1435, 1439 (9th Cir.1995); see
 
 also
 
 FED. R. CRIM. P. 31(a) (requiring that federal criminal jury verdict be unanimous). In an opinion authored by then-Judge Kennedy, we held that the right to a unanimous verdict cannot be waived, and we underscored the importance of a unanimous jury verdict:
 
 United States v. Lopez,
 
 581 F.2d 1338, 1341 (9th Cir.1978).
 

 [T]he requirement of a unanimous verdict is firmly established in the federal system.... The dynamics of the jury process are such that often only one or two members express doubt as to view held by a majority at the outset of deliberations. A rule which insists on unanimity furthers the deliberative process by requiring the minority view to be examined and, if possible, accepted or rejected by the entire jury. The requirement of jury unanimity thus has a precise effect on the fact-finding process, one which gives particular significance and conclusiveness to the jury’s verdict. Both the defendant and society can place special confidence in a unanimous verdict....
 

 To ensure that a verdict is in fact the verdict of all the jurors, the federal rules provide for an opportunity to poll the jury.
 
 See
 
 Fed. R. Crim. P. 31(d). As juror polling cases and Rule 31(d)
 
 [6]
 
 make clear, the trial judge has broad discretion to decide how to proceed in a polling situation.
 
 See, e.g., United States v. Fiorilla,
 
 850 F.2d 172, 176 (3d Cir.1988) (“It cannot be gainsaid that a trial judge is in the best position to weigh the circumstances peculiar to each trial and determine whether a poll coerced a juror into acquiescing in the majority’s demands.”);
 
 United States v. Aimone,
 
 715 F.2d 822, 832 (3d Cir.1983).
 

 Even assuming that the subsidiary act of taking a verdict includes polling the jury, however, the further step of choosing a course of conduct when polling reveals an equivocal juror and raises the specter of a non-unanimous jury is an action far more “critical” than merely accepting the verdict.
 
 Cf. Day,
 
 789 F.2d at 1224 (magistrate judge may accept jury verdict where verdict is simply received and read). In this case — not unlike voir dire — the magistrate judge framed the questions, communicated directly with Juror No. 8, and made a series of judgments about her demeanor and responses. Based on this assessment of her conduct, he had to decide whether to ask her further questions, to continue the poll (and whether to conduct further polling in her presence), to send the jury back for further deliberations, or to dismiss the jury.
 
 [7]
 

 See United States v.
 
 
 *631
 

 McClintock,
 
 748 F.2d 1278, 1293 (9th Cir. 1984) (“We also must rely on the trial court’s appraisal of the circumstances here. Only the trial judge could determine whether or not [the juror’s] affirmative response to the poll was tainted, coerced or in any other way demonstrative of uncertainty.”). The broad discretion involved leads us to conclude that the magistrate judge here engaged in an “additional action ... while presiding over jury deliberations” — a situation we left unaddressed in
 
 Foster. See Foster,
 
 57 F.3d at 732.
 

 The Eighth Circuit reached a similar conclusion in
 
 Harris v. Folk Constr. Co.,
 
 138 F.3d 365 (8th Cir.1998). In a civil case, the court held that § 636(b)(3) does not authorize a magistrate judge to evaluate the competency of, and potentially dismiss, a juror pursuant to Federal Rule of Civil Procedure 47(c).
 
 Id.
 
 at 371. The court explained that “the evaluation and subsequent dismissal of a juror are not ministerial or “additional duties”; rather, those are traditional adjudicatory functions that may only be performed by or under the constant and direct supervision of an Article III judge, absent clear and unambiguous consent to delegation.”
 
 Id.
 
 We find the Eighth Circuit’s reasoning applicable to this situation.
 

 In sum, because the jury polling at issue here implicated a critical stage of the trial proceeding, we hold, at a minimum, that the magistrate judge
 
 [8]
 
 should not have proceeded without the defendant’s affirmative consent. We now turn to the question of whether Gomez-Lepe consented.
 

 III. Consent
 

 Nothing in the record indicates, nor does the government maintain, that Gomez-Lepe consented to the magistrate judge’s actions. Nor can consent be inferred through the request of Gomez-Lepe’s counsel to poll the jury or his failure to lodge a contemporaneous objection to the magistrate.
 
 [9]
 
 In the civil context, we have been very clear that
 

 “consent by failure to object” is insufficient to clothe the magistrate with § 636(c) powers. Our insistence that consent be explicit, clear and unambiguous is not an exercise in mere formalism. But for the consent requirement, § 636(c)’s grant of judicial power to magistrates would infringe on the constitutional rights guaranteed to litigants by Article III.
 

 Nasca v. Peoplesoft,
 
 160 F.3d 578, 579 (9th Cir.1998);
 
 see also Hajek v. Burlington Northern R.R. Co.,
 
 186 F.3d 1105, 1109 (9th Cir.1999). Because the same concerns are present here and because Gomez-Lepe did not affirmatively consent, we conclude that the magistrate judge exceeded his authority.
 

 CONCLUSION
 

 We recognize the increasingly important role magistrate judges play in the federal judicial system. The Third Circuit’s observation more than ten years ago that the magistrate judge “is nothing less than indispensable” is even more true today.
 
 See Government of the Virgin Islands v. Williams,
 
 892 F.2d 305, 308 (3d Cir.1989). Our decision is in no way meant as a comment on the performance of magistrate judges generally or on their ability to effectively preside over jury deliberations. Instead, we recognize, as we must, that magistrate judges are not Article III judges and that their authority is
 
 *632
 
 circumscribed by the Act.
 
 See Colacurcio,
 
 84 F.3d at 328.
 

 Because we are mindful that district judges from time to time rely on magistrate judges to accept jury verdicts, our decision does not leave district courts and magistrates without practical alternatives. Under
 
 Foster,
 
 the magistrate judge has authority to undertake “acceptance and filing of a verdict.” We acknowledge, however, that the course of jury deliberations is unpredictable and that there is always a risk that the magistrate judge will be called upon to do more than anticipated. In light of this risk, the district judge has several other options, such as asking another district judge to take ' the verdict and, of course, obtaining consent from the parties to the magistrate judge presiding over at least certain aspects of jury deliberations. Although the Act encourages experimentation and delegation, under the circumstances presented here this cannot be accomplished at the expense of defendants without their consent. We believe that our decision strikes a practical balance consistent with the purposes of the Act.
 

 REVERSED AND REMANDED.
 

 [2]
 

 . Gomez-Lepe also challenged the admission of evidence obtained pursuant to a warrant-less search and claimed that a subsequent search warrant was issued without probable cause. These issues are addressed in a separate, contemporaneously-filed memorandum disposition.
 

 [3]
 

 . The trial proceeded with thirteen jurors. At the conclusion of the trial, Juror No. 7 was selected as the alternate juror and did not participate in the deliberations.
 

 [4]
 

 . The Act requires each federal district court to establish rules pursuant to which magistrate judges discharge their duties. 28 U.S.C. § 636(b)(4). Notably, the Local Rules for the Eastern District of Washington authorize a magistrate judge to accept petit jury verdicts in
 
 civil
 
 cases but make no mention of
 
 criminal
 
 cases,
 
 see
 
 E.D. Wash. L.M.R. 8(e), whereas the Local Rules for the Western District of Washington authorize magistrate judges to accept jury verdicts in both civil and criminal cases,
 
 see
 
 W.D. Wash. M.J.R. 9(e).
 

 [5]
 

 . In a case not involving magistrate judges, at least one court concluded that resolving questions raised by jurors during the jury poll is a "critical stage” such that the Sixth Amend
 
 *630
 
 ment requires the presence of defense counsel and the accused.
 
 See United States v. McCoy,
 
 429 F.2d 739, 742 (D.C. Cir.1970).
 

 [6]
 

 . Rule 31(d) provides that if a poll reveals a lack of unanimity, then the court may either direct the jury to deliberate further or declare a mistrial and discharge the jury.
 
 See Government of the Virgin Islands v. Paniagua,
 
 922 F.2d 178, 183 (3d Cir.1990) (suggesting without expressly holding that magistrate judge could not declare mistrial).
 

 [7]
 

 . We note that the juiy poll was conducted by a magistrate judge who was not acting under the direct and constant supervision of the district judge. As such, this case is distinguished from those in which magistrate judges were in direct communication with the district judge.
 
 See, e.g., United States v. Demarrias,
 
 876 F.2d 674, 677 (8th Cir.1989) (approving magistrate judge's communications with jury during supervision of verdict where magistrate judge merely acted as an intermediary between jury and district judge who “maintained full control of the proceedings by telephone”). Because the issue is not presented here, we express no opinion whether such supervision would cure the authority issue we face. Moreover, because Gomez-Lepe did
 
 not
 
 affirmatively consent to the mag
 
 *631
 
 istrate judge’s actions,
 
 see infra,
 
 we express no opinion as to whether consent would cure the delegation problem posed by the case before us.
 

 [8]
 

 . Because our holding rests on the authority of the magistrate judge, we do not decide whether the outcome would have been different had a district judge conducted the polling.
 

 [9]
 

 . Given the district judge's unavailability and the fact that the magistrate judge was knee deep in the polling process, it is unlikely that an objection at that point would have had any practical effect. Unlike
 
 Peretz,
 
 Gomez-Lepe did raise the issue in his post-trial motion. The government never raised a waiver issue and, accordingly, we do not address it here.