**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jose Francisco REYNA–TAPIA, aka**
**Jose Reyna, Defendant–**
**Appellant.**

**Nos. 01–10415, 01–10416.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 10, 2002.

Filed June 28, 2002.

Atmore L. Baggot, Apache Junction, AZ, for the defendant-appellant.

Linda C. Boone and Charles Huellmantel, Phoenix, AZ, for the plaintiff-appellee.

Before SCHROEDER, Chief Judge, B. FLETCHER and KOZINSKI, Circuit Judges.

## OPINION

BETTY B. FLETCHER, Circuit Judge.

We write primarily to establish whether a district court may delegate its duty to conduct a Rule 11 plea colloquy in a felony case to a magistrate judge with the defendant's consent. We hold that it may, provided the district judge reviews the record *de novo*. In addition, the appellant raises the issue of whether deportation terminates lawful permanent residence. To dispel any doubt, we hold that upon deportation an alien's status as a *lawful permanent resident ends*.

### I.

Factual and Procedural Background

Reyna–Tapia originally entered the United States illegally in the mid–1980s. In 1990, he became a lawful permanent resident ("LPR") through the amnesty program. *See* 8 U.S.C. § 1255a (1988). In 1998, Reyna–Tapia pled guilty to the offense of sexual abuse of a minor, an aggravated felony. The INS initiated deportation proceedings against him, pursuant to 8 U.S.C. § 1229, based on the aggravated felony conviction. He was ordered removed from the United States on October 19, 1999.

On October 1, 2000, Reyna–Tapia was found a few miles north of the border between Mexico and Arizona. Magistrate Judge Irwin in Yuma issued an order of temporary detention, which indicated that Reyna–Tapia was "not a citizen of the United States nor lawfully admitted for permanent residence as defined at 8 U.S.C. § 1101(a)(2)." Reyna–Tapia was charged with illegal re-entry. He was also charged with violating the conditions of his supervised release, which he was serving for his prior conviction for sexual abuse of a minor. Reyna–Tapia entered into a written plea agreement with the government, pleading guilty to the offense of re-entry after deportation in violation of 8 U.S.C. § 1326(a) enhanced by § 1326(b)(2)[1] as charged. Reyna–Tapia

---

1. § 1326 provides:
 (a) In general
 Subject to subsection (b) of this section, any alien who—

 (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion,

consented to having the magistrate judge administer the Rule 11 plea colloquy, which the district court reviewed *de novo* before accepting the plea.

When the presentence report was prepared, it showed that Reyna–Tapia had become an LPR in 1990. Upon discovering this information in the report, the defense moved to withdraw the guilty plea and for an acquittal. The defense argued that the court should allow Reyna–Tapia to withdraw his guilty plea because his attorney was misled by Magistrate Judge Irwin's temporary order of detention and believed that Reyna–Tapia was not an LPR prior to his deportation. With the new information disclosed in the presentence report, the defense wanted to argue that Reyna–Tapia never lost his status as an LPR, and that if he did, that the termination of his LPR status did not comply with due process.

After listening to the tape of Reyna–Tapia's immigration proceeding, the district court concluded that the 1999 deportation terminated Reyna–Tapia's LPR status and that Reyna–Tapia was not denied due process at his deportation hearing. Therefore, the district court found no just reason to allow Reyna–Tapia to withdraw his plea.

At sentencing, Reyna–Tapia entered an admission to the allegation that he violated the conditions of his supervised release. As a result, his supervised release was revoked, and he was sentenced to 12 months imprisonment to be served concurrently with his 54–month sentence for illegal re-entry.

Reyna–Tapia appeals.[2] He contends that the district court erred in refusing to allow him to withdraw his guilty plea and in allowing the magistrate judge to administer the Rule 11 allocution. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## II.

Termination of LPR Status Upon Deportation

Reyna–Tapia argues that the district court erred in concluding that he did not provide a fair and just reason for withdrawing his guilty plea. He claims that, because his attorney was misled by Magistrate Judge Irwin and did not discover that Reyna–Tapia was an LPR until he read the presentence report, he was unaware of the potential defense that his LPR status was never properly terminated. If his 1999 deportation did not terminate his LPR status, the argument goes,

deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection— . . .

(2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both. . . .

2. The parties all agree that Reyna–Tapia is entitled to bring this appeal despite his plea agreement waiving all appeals. The district court orally ruled that Reyna–Tapia could appeal its decision on the motion to withdraw the guilty plea, thereby superseding the plea agreement. *United States v. Buchanan,* 59 F.3d 914, 918 (9th Cir.1995) ("[T]he district court's oral pronouncement controls. . . .").

Reyna–Tapia committed no crime in re-entering the United States after deportation without the express consent of the Attorney General. The district court concluded that there was no merit to this argument.

■ The denial of a motion to withdraw a guilty plea prior to sentencing is reviewed for an abuse of discretion. *United States v. Nagra*, 147 F.3d 875, 880 (9th Cir.1998). The court may allow a defendant to withdraw his guilty plea prior to sentencing "if the defendant shows any fair and just reason." *United States v. Hyde*, 520 U.S. 670, 671, 117 S.Ct. 1630, 137 L.Ed.2d 935 (1997). Because we too find no merit to Reyna–Tapia's argument that deportation does not terminate an alien's LPR status, we affirm.

■ The term "lawfully admitted for permanent residence" means "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20) (2000). According to INS regulations, LPR status terminates upon entry of a final administrative order of deportation.[3] 8 C.F.R. § 1.1(p) (1998). Reyna–Tapia argues that this regulation conflicts with the statutory definition of "Order of Deportation" at 8 U.S.C. § 1101(a)(47)(A), but we find no conflict between the regulation and the statute.

■ Section 1101(a)(47)(A) provides:

The term "order of deportation" means the order of the special inquiry officer, or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is deportable, concluding that the alien is deportable or ordering deportation.

The statute is silent as to whether or not a final order of deportation ends lawful permanent residence. "[When] the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

The INS's construction that an order of deportation ends lawful permanent residence is permissible. It is inherently reasonable to conclude that, when an alien is ordered deported, he has lost his "privilege of residing permanently in the United States as an immigrant." 8 U.S.C. § 1101(a)(20). In fact, we have held, without relying on the INS regulations, that an alien's lawful permanent residence terminates for certain purposes when the INS is legally permitted to deport the alien. *Foroughi v. INS*, 60 F.3d 570, 574 (9th Cir. 1995) (for purposes of establishing his eligibility for discretionary relief based on seven years of unrelinquished domicile within the country, an "alien loses his lawful permanent resident status when he places himself in a legal posture where the INS is no longer precluded by law from deporting him").

In short, the entry of the 1999 deportation order against Reyna–Tapia terminat-

---

**3.** Reyna–Tapia appears to suggest in his briefing that, because he obtained his LPR status through the amnesty program, he is entitled to more protection from deportation than other lawful permanent residents. Amnesty does not grant an alien any sort of super-LPR status. *See* 8 U.S.C. § 1255a(b) (directing the Attorney General to adjust the status of certain aliens who entered the United States prior to January 1, 1982, to that of aliens lawfully admitted for permanent residence). As with any other LPR, the INS could deport Reyna–Tapia, and thereby terminate his LPR status, based on his commission of an aggravated felony by following the procedures for removal found at 8 U.S.C. §§ 1229 and 1229a. As discussed below, the INS followed these procedures properly.

ed his LPR status. He needed the Attorney General's express consent to re-enter. Because he did not have such consent, his re-entry was illegal.

## III.

Due Process

 Reyna–Tapia contends that, if deportation terminates an alien's LPR status, he was denied due process at his deportation hearing because he was not informed that his LPR status was at risk. In a criminal prosecution for re-entry by a removed alien, a defendant can collaterally challenge his underlying deportation only if he can demonstrate that: (1) his due process rights were violated by defects in the underlying proceeding, and (2) he suffered prejudice as a result of the defects. *United States v. Zarate–Martinez*, 133 F.3d 1194, 1197 (9th Cir.1998). No one questions that, as an LPR, Reyna–Tapia was entitled to due process of law before he could be removed from the United States.

The district court, after reviewing the record of the underlying removal proceeding, concluded that Reyna–Tapia was not denied due process. We too have reviewed the record of the removal proceeding, including the audio tape of his hearing, and agree with the district court that Reyna–Tapia was afforded due process.

In accordance with the requirements of due process and 8 U.S.C. § 1229, Reyna–Tapia was given notice that the INS was seeking to deport him based on his conviction for sexual abuse of a minor. The notice recognized that Reyna–Tapia was an LPR but asserted that he was deportable because of his aggravated felony conviction. This information should have put Reyna–Tapia on notice that his "privilege of residing permanently in the United States as an immigrant," in other words his LPR status, was at risk. 8 U.S.C. § 1101(a)(20). Reyna–Tapia has identified no valid basis for finding that he was denied due process in his removal proceeding.

## IV.

Magistrate Authority to Administer Rule 11 Plea Colloquy

 Under Federal Rule of Criminal Procedure 11(f), the district court must confirm that there is a factual basis for a guilty plea before entering judgment upon the plea. In this case, the magistrate judge administered the Rule 11 colloquy with Reyna Tapia's consent.[4] The magistrate judge verified that Reyna–Tapia understood the rights he was forfeiting by pleading guilty. She also confirmed that he was mentally competent to enter a guilty plea, that he had gone through the plea agreement with his attorney and understood it, and that he was satisfied with his attorney's representation. Finally, she inquired into the factual basis of the plea. Although the magistrate judge did not ask Reyna–Tapia if he was aware that he was not permitted to re-enter the United States,[5] she did ask whether he had "any

---

4. hAt oral argument, it was asserted that Reyna–Tapia did not consent to having the magistrate judge find the factual basis required by Rule 11(f). However, the consent form signed by Reyna–Tapia stated that he agreed "to go forward with his plea of guilty" before a magistrate judge. Furthermore, the form was attached to the district court's order of referral, which specified that the magistrate was to administer the Rule 11 allocution and

make findings as to whether there exists a factual basis for the charge.

5. For the offense of illegal re-entry, "the government need not prove that [the alien] knew he was not entitled to enter the country without the permission of the Attorney General." *United States v. Leon–Leon*, 35 F.3d 1428, 1432 (9th Cir.1994) (quoting *Pena–Cabanillas v. United States*, 394 F.2d 785, 789–90 (9th

papers or permission to return." He answered that he did not.

■ Based on the Rule 11 hearing, the magistrate judge found that there was a factual basis for the guilty plea and recommended that the district court accept the guilty plea. The district court, "having reviewed [the] matter de novo, and no objections having been filed," accepted the recommendation of the magistrate judge. Reyna–Tapia complains that the district court erred in delegating the Rule 11(f) duty to the magistrate judge. We review *de novo* the delegation of authority to a magistrate judge. *United States v. Gomez–Lepe*, 207 F.3d 623, 627 (9th Cir. 2000).

Whether magistrates are permitted to conduct a Rule 11 plea colloquy in a felony case pursuant to a defendant's consent is a question of first impression for our court. The jurisdiction of federal magistrate judges is governed by the Federal Magistrates Act. 28 U.S.C. § 636 (2000). The duty of administering a plea colloquy before the acceptance of a guilty plea is not among the duties specifically assigned in the Magistrates Act. *See* 28 U.S.C. § 636. If the duty may be delegated to magistrates, it must be based on the catch-all provision of § 636(b)(3), which provides that "[a] magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States."

In *Peretz v. United States*, 501 U.S. 923, 935, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991), the Supreme Court held that a magistrate judge may conduct jury *voir dire* proceedings in felony cases as an "additional duty" sanctioned by the Magistrates Act when the defendant has consented.[6] The Supreme Court reasoned that the defendant waives his right to have an Article III judge conduct *voir dire* when he consents to having the magistrate judge conduct it, and that the availability of *de novo* review of *voir dire* adequately preserves Article III's structural guarantees. *Id.* at 936–40, 111 S.Ct. 2661.

■ Following *Peretz*, we constructed a framework for analyzing the "additional duties" provision of the Magistrates Act, 28 U.S.C. § 636(b)(3). We begin with the premise that "the Supreme Court's interpretation of § 636(b)(3) establishes the presence or absence of consent as the most important factor in determining what the section encompasses." *Gomez–Lepe*, 207 F.3d at 628. In a felony case, the defendant's consent is required except when the magistrate judge is handling what are considered "subsidiary matters." *United States v. Carr*, 18 F.3d 738, 740 (9th Cir.1994) (reading back trial testimony to the jury considered "subsidiary"). By contrast, when a magistrate judge is handling a "critical stage" of a criminal proceeding, the defendant's consent is required for the delegation to fall within the "catch-all" provision of § 636(b)(3). *United States v. Foster*, 57 F.3d 727, 731 (9th Cir.1995), *rev'd on other grounds*, 133 F.3d 704 (9th Cir.) (en banc), *vacated as to that ground*, 525 U.S. 801, 119 S.Ct. 32, 142 L.Ed.2d 24 (1998). In cases where consent is given, "far more extensive sorts of proceedings" beyond subsidiary matters may be conducted by a magistrate judge. *NLRB v. A–Plus Roofing, Inc.*, 39 F.3d

---

Cir.1968)). Specific intent is not required for the offense of illegal re-entry. *Id.*

**6.** In a prior case, *Gomez v. United States*, 490 U.S. 858, 874–76, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989), the Supreme Court had held that a criminal defendant's right to have an Article III judge hear his felony case precluded the conclusion that the "additional duties" language authorized the substitution of a magistrate judge during *voir dire* absent the defendant's consent. The Court had left open whether consent would cure the problem.

1410, 1416 (9th Cir.1994). Under this line of cases, consent is treated as the most important factor and can extend magistrate jurisdiction to cover critical stages of criminal proceedings.

However, according to *Peretz*, there is a limit to how far consent will go to confer jurisdiction on magistrates. In addition to consent and *de novo* review, the Supreme Court indicated that, for a function to properly fall within the sphere of "additional duties" authorized by Congress in the Magistrates Act, it must bear some relationship to those duties already assigned to magistrates by the act. *Peretz*, 501 U.S. at 930, 111 S.Ct. 2661; *see also United States v. Williams*, 23 F.3d 629, 632 (2d Cir.1994) (interpreting *Peretz*). The additional duty must be "comparable in responsibility and importance" to the duties specified in the Magistrates Act. *Peretz*, 501 U.S. at 933, 111 S.Ct. 2661.

We are concerned that the duty of administering a plea colloquy in a felony case involves responsibilities of greater importance than those involved in the duties already assigned by the Magistrates Act. Although the Magistrates Act specifically provides that, with the parties' consent, a district court may delegate to a magistrate supervision of entire civil and misdemeanor trials, *see* 28 U.S.C. § 636(a)(3), (a)(4), (c), it provides no jurisdiction for magistrates to preside over entire felony trials simply because the defendant consents. *See Gomez*, 490 U.S. at 872, 109 S.Ct. 2237 (holding that "the carefully defined grant of authority to conduct trials of civil matters and of minor criminal cases should be construed as an implicit withholding of the authority to preside at a felony trial"). The rights at stake in felony trials are far greater than those involved in misdemeanor or civil trials and substantial discretion must be exercised by the district court to protect those rights.

Likewise, a felony plea colloquy constitutes a sensitive and critical stage of a criminal prosecution where the same rights are at stake as with felony trials and the court must exercise similar discretion. *See Gomez–Lepe*, 207 F.3d at 629 (defining a "critical stage" of a criminal prosecution). As the Supreme Court has said, "a plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). By pleading guilty, the criminal defendant is forfeiting significant constitutional rights, including his Fifth Amendment right against self-incrimination and his right to put the government to its burden of proving his guilt beyond a reasonable doubt. The discretion exercised by the judge in deciding whether to accept the plea depends upon the information and impressions he gains from the plea colloquy. He uses these to determine whether in his judgment the defendant is acting voluntarily, whether he understands the rights he is forfeiting, and whether there is a factual basis for the plea. *De novo* review, which entails a reading of a cold transcript, acts as a poor substitute for these first-hand impressions. Consent may be insufficient to cure the problems involved with the delegation of Rule 11 duties to a non-Article III judge.

The delegation of the duty to inquire into the factual basis of the plea under Rule 11(f) is particularly problematic. *Reyna–Tapia* argues that the judge who sentences the defendant, the district judge, should bear the Rule 11(f) responsibility to ensure that all available information is considered before entry of judgment on the plea. There is some merit to this argument.

Rule 11(f) is designed to protect defendants who do not realize that their conduct does not actually fall within the charge. Fed.R.Crim.P. 11 advisory committee notes; *see also Libretti v. United States,* 516 U.S. 29, 42, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995). Only the sentencing judge has the benefit of the presentence report, which may reveal additional facts showing that the defendant's conduct does not fall within the charge to which he is pleading. *See* Fed.R.Crim.P. 11 advisory committee notes (recognizing the presentence report as a useful tool to ensure that the defendant's conduct actually falls within the offense charged). To delegate this responsibility to a magistrate judge, who will conduct the inquiry without the benefit of the presentence report, dilutes the important safeguard in Rule 11(f).

Nonetheless, all other circuits that have addressed this issue have concluded that the duty of conducting a Rule 11 allocution, when the defendant consents, is a duty comparable in responsibility to the duties already assigned to magistrates by the Act. *See United States v. Torres,* 258 F.3d 791, 795–96 (8th Cir.2001); *United States v. Dees,* 125 F.3d 261, 265 (5th Cir.1997); *United States v. Ciapponi,* 77 F.3d 1247, 1250–51 (10th Cir.1996); *United States v. Williams,* 23 F.3d 629, 633 (2d Cir.1994). The Second Circuit explained in detail in *Williams:*

> An allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis. The catechism administered to a defendant is now a standard one, dictated in large measure by the comprehensive provisions of Rule 11 itself, which carefully explain what a court must inquire about, what it should advise a defendant and what it should determine before accepting a plea. *See* Fed.R.Crim.P. 11(c), (d) and (f). Further, administrating an allocution is less complex than a number of duties the Magistrates Act specifically authorizes magistrates to perform. For example, such judicial officers may hear and determine pretrial matters, other than eight dispositive motions. *See* 28 U.S.C. § 636(b)(1)(A). In addition, a magistrate may conduct hearings, including evidentiary hearings, and submit to the district court recommended findings of fact for the eight dispositive motions, and do the same with habeas petitions. *See id.* § 636(b)(1)(B).

> In construing the additional duties clause as encompassing the referral to a magistrate judge of a Rule 11 allocution, we rely on the same rationale spelled out by *Peretz:* "The generality of the category of 'additional duties' indicates that Congress intended to give federal judges significant leeway to experiment with possible improvements in the efficiency of the judicial process that had not already been tried or even foreseen." 501 U.S. at ——, 111 S.Ct. at 2667. Congress evinced its purpose, the Court continued, by including a "broad residuary clause" in the Act rather than "a bill of particulars." *Id.*

> The legislative history of the Magistrates Act and its various amendments supports the notion that it aims to give district courts the helping hands of a magistrate judge so as to free the district court from the burden of dealing with subordinate, but distracting, duties. *Id.* at ——, 111 S.Ct. at 2668.

23 F.3d at 632–33.

We disagree with the Second Circuit that a Rule 11 plea colloquy is a "garden variety ministerial function." As discussed above, a plea colloquy is a highly critical stage of a criminal prosecution. However, we recognize the weight of authority holding that magistrates may perform this function with the defendant's consent, and we join our sister circuits in

acknowledging that Congress intended to give district courts significant leeway to experiment with the use of magistrates. Therefore, we hold that, when a defendant explicitly consents, a magistrate judge may administer the Rule 11 plea colloquy in a felony case, so long as the district court reviews the proceedings *de novo*.[7]

In the case before us, Reyna–Tapia consented to having the magistrate judge administer his plea colloquy, and the district court reviewed the record *de novo* before accepting the plea. Under these circumstances, the district judge did not err in delegating his Rule 11 duties to the magistrate judge, and the plea is not infirm.

## V.

Conclusion

We affirm the district court's denial of Reyna–Tapia's motion to withdraw his guilty plea. Reyna–Tapia has not provided a fair and just reason for withdrawing his plea. Reyna–Tapia's 1999 deportation terminated his LPR status, and the underlying deportation proceeding complied with the requirements of due process. Finally, the district court's delegation of its Rule 11 duties to the magistrate judge was proper under the circumstances of this case.

AFFIRMED.

7. We note that the Tenth Circuit has held that the district court need not review Rule 11 proceedings referred to a magistrate judge unless the parties so demand. *Ciapponi*, 77 F.3d at 1251. However, the Fifth and the Eighth Circuits have relied on the district court's *de novo* review to conclude that administering a plea colloquy is a "ministerial" function and "sufficiently reviewable so as not to threaten Article III's structural guarantees." *See Torres*, 258 F.3d at 796 (quoting *Dees*, 125 F.3d at 268). We agree with the Fifth and the Eighth Circuits that *de novo* review by the district court is a crucial factor for finding the duty to be delegable.